# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

BISMARK A. OBANDO,

    *Petitioner*,

vs.

WILLIAM DONAT, *et al.*,

    *Respondents.*

3:08-cv-00565-ECR-WGC

ORDER

This habeas matter under 28 U.S.C. § 2254 comes before the Court for a final decision.

### *Background*

Petitioner Bismarck Obando seeks to overturn his 2004 Nevada state conviction, pursuant to a jury verdict, of sexual assault. Petitioner challenged the conviction on both direct appeal and state post-conviction review. In the present federal petition, Obando raises claims of ineffective assistance of trial and appellate counsel concerning trial counsel's failure to object to alleged improper argument in the State's closing arguments.

Consideration of the prejudice element of the applicable analysis, if reached herein, entails consideration of the trial evidence presented. In addressing a challenge to the sufficiency of the evidence on direct appeal, the Supreme Court of Nevada summarized the applicable substantive law and trial evidence as follows:

> A person is guilty of sexual assault if he subjects someone
> to sexual penetration "against the will of the victim or under

conditions in which the perpetrator knows or should know that the victim is mentally or physically incapable of resisting or understanding the nature of his conduct." The use of overt physical force is not required to support a conviction under NRS 200.366, only penetration against the will of the victim. Furthermore, this court has determined that even the uncorroborated testimony of a victim is sufficient to uphold a rape conviction.

. . . . .

The victim, a 49-year-old virgin, testified that she and Obando had a romantic relationship for a few months and that on March 10, 1998, they went on a dinner date to the buffet at Baldini's Casino in Reno. After dinner, she and Obando sat in the car at the Baldini's parking lot and talked. She then asked Obando to take her home, he refused, and she became scared and cried. He parked his car at the house next to his house, and they sat and talked for about an hour. She testified that Obando began making disparaging remarks towards her and that he was becoming very upset and aggressive. She then attempted to exit the car twice, but Obando prevented her from leaving. The first time he stretched his arm over her holding the door shut. When she tried to exit the second time, she opened the car door, but Obando grabbed her left upper arm and pulled her back into the car. Obando then drove the car around the block and stopped in front of his house. While parked, two policemen drove by, but she did not attempt to obtain their attention. Obando then [exited] the vehicle and opened her door and told her to exit. She got out of the car, and they walked up to his house, entered, and walked upstairs to the bedroom he was renting. She testified that Obando told her not to yell because no one was home. Once in the bedroom, Obando locked the door and began removing his clothing. He then began to remove her clothing. She resisted by holding onto her clothing, but Obando succeeded in removing all of her clothing except her shirt. Obando then began touching her all over her body, and she attempted to push him away but could not. He then touched her "female area" "on the inside" with his hand and mouth. She testified that he then placed "his part" or "male organ" in her "private part." She stated she was crying during the whole episode. After their sexual encounter, she testified that she attempted to get up but that he pulled her down. She also testified that he again had sex with her the next morning, after which she put on her clothes and went to the bathroom. Upon exiting the bathroom, she encountered a lady in the hallway, who was later identified as the manager of the house where Obando rented a room, but she did not speak to her. She and Obando then left the house, drove to McDonald's, and Obando then drove her home.

Obando testified that he and the victim had a romantic relationship, and on March 10, 1998, they went on a dinner date to the buffet at Baldini's. He testified that after eating at Baldini's, he drove the victim to his house and parked the car in the front, where they sat and talked because the manager of the house

>was home and awake and he did not want her to see the victim and "get the wrong idea" of the victim. Obando then drove a block away and parked the car. In the car they talked, hugged, and kissed. Noticing that it was late, Obando asked the victim if she wanted him to take her home or if they should return to his house. They eventually returned to Obando's house. He further testified that he never prevented the victim from leaving the car and that he never grabbed her or held her in the vehicle. Once at Obando's house, they walked up to the door together, entered, and then walked upstairs to the room that Obando was renting. While in the room, they hugged each other, the victim unbuttoned Obando's shirt, and he unbuttoned her shirt. They then took off their pants and "made love." He testified that she never told him to stop or gave him any reason to believe she was not willing. In fact, she told him that she was a virgin and not to "do it hard." He testified that they "made love" a second time a few hours later. The next morning the victim left Obando's room and went to the bathroom, where she saw and spoke to the manager of the house. They then left the house and went to McDonald's for breakfast, and Obando then took her home.
>
>The nurse who examined the victim hours after the incident testified that the victim was very upset, crying, and embarrassed. She had a couple of bruises on her left upper arm, swelling of her labia minora, labia majora, and vagina, a long and deep laceration in her vagina, and abrasions in the vaginal area, one of which was approximately 1-1/2 to 2 inches inside the vaginal opening and consistent with being caused by a fingernail. The nurse stated that she would not expect to see such injuries in a normal consenting adult female and concluded that the victim's injuries were consistent with the victim's account of the assault.
>
>A forensic nurse specialist also testified that the examining nurse's factual findings seemed accurate; however, she concluded, based on those facts as well as her own experience, that these injuries could be consistent with consensual sex in a person who had not had previous intercourse.

#18, Ex. 25, at 2-5 (citation footnotes omitted).[1]

### *Standard of Review*

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential" standard for evaluating state-court rulings that is "difficult to meet" and "which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*,

---

[1] The state supreme court's summary of the pertinent trial evidence is presumed to be correct unless shown to be incorrect by clear and convincing evidence. *See, e.g., Sims v. Brown*, 425 F.3d 560, 563 n.1 (9th Cir. 2005). Petitioner has not so demonstrated here, and the state supreme court's recital is supported by the state court record.

131 S.Ct. 1388, 1398 (2011). Under this highly deferential standard of review, a federal court may not grant habeas relief merely because it might conclude that the state court decision was incorrect. 131 S.Ct. at 1411. Instead, under 28 U.S.C. § 2254(d), the court may grant relief only if the state court decision: (1) was either contrary to or involved an unreasonable application of clearly established law as determined by the United States Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 131 S.Ct. at 1398-1401.

A state court decision is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *E.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15-16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003). A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions. *Id.* Indeed, the Supreme Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them. *Id.* Moreover, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." 540 U.S. at 16, 124 S.Ct. at 11. For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable." *E.g., Mitchell*, 540 U.S. at 18, 124 S.Ct. at 12; *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of Section 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal

courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> . . . . [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence.

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Pinholster*, 131 S.Ct. at 1398.

### *Governing Substantive Law*

On a claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must demonstrate that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's defective performance caused actual prejudice. On the performance prong, the issue is not what counsel might have done differently but rather is whether counsel's decisions were reasonable from his perspective at the time. The court starts from a strong presumption that counsel's conduct fell within the wide range of reasonable conduct. On the prejudice prong, the petitioner must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *E.g., Beardslee v. Woodford*, 327 F.3d 799, 807-08 (9th Cir. 2003).

While surmounting *Strickland*'s high bar is "never an easy task," federal habeas review is "doubly deferential" in a case governed by the AEDPA. In such cases, the reviewing court must take a "highly deferential" look at counsel's performance through the also "highly deferential" lens of § 2254(d). *Pinholster*, 131 S.Ct. at 1403 & 1410.

/ / / /

*Discussion*

*Ground 1*

In Ground 1, petitioner alleges that he was denied effective assistance of counsel when trial counsel failed to object to the prosecutor's alleged improper vouching and argument, including vouching for the credibility of the victim, improperly branding petitioner as a liar, and improperly vouching for the credibility of the reactions of other witnesses as well as individuals who did not testify.

Rather than seek to summarize and/or isolate statements out of context, the Court refers to the relatively brief transcript of the closing arguments that are not directed solely to technical legal argument, from the State's argument through the defense closing and State rebuttal.[2]

On state post-conviction review, the state district court denied relief after holding an evidentiary hearing at which trial counsel testified.[3]

Thereafter, on the state post-conviction appeal, the Supreme Court of Nevada rejected the claims presented to that court on the following grounds:

> First, appellant argues that his trial counsel was ineffective for failing to object when the State, during closing argument, vouched for the credibility of the victim. Appellant argues that the State called the victim a person of honor and integrity, a virgin, compliant, and a simple person; all of which amount to vouching for the victim's credibility.
>
> Appellant fails to demonstrate that his counsel was deficient or that he suffered prejudice. Statements by the State amounting "to an opinion as to the veracity of a witness in circumstances where veracity might well have determined the ultimate issue of guilt or innocence" are improper. However, the State is allowed "reasonable latitude" to argue concerning the credibility of witnesses. During closing argument, the State argued that, based on the testimony and evidence concerning the victim's lack of education, lack of social skills, and that she was from a rural area in Mexico, she would not be able to fabricate her testimony. In addition, the State argued that, based on the testimony, evidence, and her demeanor while testifying, the victim

---

[2] #17, Ex. 14, at 61, line 24, through 94, line 14; *id.*, at 98, line 14, through 101, line 8.

[3] See #18, Ex. 34, at 13-22 & 28-30; *id.,* Ex. 38.

-6-

is compliant, meek, and submissive, therefore, she would be unlikely to fabricate her testimony. Further, the State argued that, due to the fact that the victim was a virgin prior to this incident, it was extremely embarrassing for her to discuss it in front of the jury.

When the closing argument is viewed as a whole, the State's argument was that the victim had no motive to lie and that she lacked the sophistication to lie. The State argued that the jury members would have to use the victim's characteristics to decide for themselves if the victim was credible. *Thus, the State did not improperly vouch for the creditability of the victim*.

In addition, at the evidentiary hearing, appellant's trial counsel testified that he made a tactical decision not to object to these statements because he could effectively challenge them during his closing argument. Tactical decisions of counsel are virtually unchallengeable and appellant fails to demonstrate any such circumstances here. Therefore, the district court did not err in denying appellant's claim that his trial counsel was ineffective for failing to object to the State's vouching for the creditability of the victim.

Second, appellant argues that his trial counsel was ineffective for failing to object when the State, during closing argument, labeled appellant a liar. The State told the jury that the victim and appellant had different versions of the events, so there must be a "liar in the midst." The State then discussed inconsistencies in appellant's statements to police and his testimony to argue that the jury should believe the victim's version of the events.

Appellant fails to demonstrate that his trial counsel was deficient or that he suffered prejudice. It is not proper argument for the State to argue a defense witness is a liar. *However, the State may use inferences to demonstrate that a witness's testimony is untrue. When viewed in context, the State simply argued that both the victim's and appellant's testimonies could not both be true, thus the jury had to decide which person to believe*. Further, at the evidentiary hearing, appellant's trial counsel stated that he did not object at that time because he felt it would have been harmful as it seemed the State was doing poorly. Tactical decisions of counsel are virtually unchallengeable and appellant fails to demonstrate any such circumstances here. Therefore, we conclude that the district court did not err in denying this claim.

Third, appellant argues that his trial counsel was ineffective for failing to object when the State, during closing argument, argued facts not in evidence. Appellant claims that the State argued that several people, who were not witness to the sexual assault, believed the victim's version of events. The State discussed the reactions of witnesses when they heard about the sexual assault. In addition to referencing testifying witnesses, the State mentioned the victim's brothers' reactions after hearing of the incident, even though they did not testify at trial.

> Appellant fails to demonstrate that that [sic] he was prejudiced. It is improper for the State to discuss facts that were not presented in evidence. *A review of the record reveals that all of the reactions discussed by the State were presented in testimony from witnesses. The witnesses, with the exception of the victim's brothers, testified to their own reactions. The victim's brothers' reactions were discussed during the testimony of Maria Garcia, the victim's work supervisor. During closing, the State argued that, based on the facts in evidence, the victim was credible due to her actions with others following the incident and how those people reacted once they heard from the victim concerning the incident. When viewed in context, the State's argument was that the jury should consider the reactions of people who knew the victim when the jury members weighed the credibility of the victim against appellant.* Therefore, the district court did not err in denying this claim.

#18, Ex. 44, at 2-6 (emphasis added)(citation footnotes omitted).

The state supreme court's rejection of the claims in Ground 1 was neither contrary to nor an unreasonable application of *Strickland* and following authority.

Petitioner argues at length that the prosecutor's arguments "violated federal . . . law," relying extensively on federal appellate case law from federal criminal trials. This argument misses the mark.

Federal courts monitor the conduct of federal prosecutors as an exercise of supervisory power that is broader than review for constitutional error. *See,e.g., Donnelly v. DeChritoforo*, 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). On federal habeas review of a state court conviction for constitutional error, the standard of review for a claim of misconduct instead is "'the narrow one of due process, and not the broad exercise of supervisory power.'" *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986)(quoting *Donnelly*, 416 U.S. at 642, 94 S.Ct. at 1871). The Supreme Court does not exercise supervisory authority over the state courts as it does over the federal courts. The high court can direct the manner in which federal criminal proceedings are conducted even in the absence of constitutional error, but it may not do so with regard to state criminal cases. *See,e.g., Danforth v. Minnesota*, 552 U.S. 264, 289, 128 S.Ct. 1029, 1046, 169 L.Ed.2d 859 (2008). Further, a state supreme court clearly is not a subordinate court to a regional federal court of appeals with regard to non-constitutional rulings.

In the present case, all but one of the Ninth Circuit cases relied upon by Obando in this regard concern the conduct of federal prosecutors in federal criminal trials. None of the cases make an, apposite, constitutional holding in this regard.[4] Even if petitioner were to cite a Ninth Circuit case from a federal criminal case that was wholly indistinguishable with respect to the closing argument made, he would not carry his burden under AEDPA. The Supreme Court of Nevada, again, is not a subordinate court to the Ninth Circuit. Nor is this case a federal criminal matter on direct appeal. Even if the Ninth Circuit reached a contrary conclusion on a constitutional issue regarding a prosecutor's closing argument, the Supreme Court of Nevada would not be bound to follow that decision, as the state high court would be bound only by an apposite holding of the United States Supreme Court. *A fortiori*, the Supreme Court of Nevada clearly is not bound to follow a non-constitutional holding by the Ninth Circuit regarding prosecutorial closing argument. Again, petitioner could cite a Ninth Circuit holding from a federal criminal case that was virtually on all fours with the present case, which he in fact has not done, and he would not carry his burden under AEDPA under established law.

The United States Supreme Court cases relied upon by petitioner in his argument[5] either similarly do not state a constitutional holding binding on the States or instead state a broad principle of due process framed in such generality that considerable leeway is left in its application to a particular case.[6] One of the cited decisions is not even a criminal case.

---

[4] See cases cited in petitioner's reply, #30, at 9-10 & 13. Indeed, the Ninth Circuit expressly held in *United States v. Necoechea*, 986 F.2d 1273 (9th Cir. 1993), one of the decisions relied upon by petitioner, that the vouching error in the federal constitutional trial was *not* constitutional error. 986 F.3d at 1282-83. The Ninth Circuit made a constitutional holding in *United States v. Kojayan*, 8 F.3d 1315 (9th Cir. 1993). However, in that case, the prosecutor stated that an individual did not testify because he invoked his privilege against self-incrimination when – in truth – the individual had a cooperation agreement to testify truthfully. Such an overt lie by the prosecutor to the jury is not presented in this case. The pre-AEDPA habeas opinion in *Brown v. Borg,* 951 F.2d 1011, 1015-16 (9th Cir. 1991), similarly involved a blatant *Brady-Napue* violation, with the prosecutor then knowingly lying to the jury in closing argument, a situation which is not presented here.

[5] See cases cited in reply, #30, at 10 & 11.

[6] *See Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011):

> A state court's determination that a claim lacks merit precludes

(continued...)

-9-

1    Petitioner's reliance on such federal law authorities that principally concern the conduct
2    of federal criminal trials accordingly is misplaced.
3    With regard to non-constitutional holdings under Nevada state law regarding
4    prosecutorial argument in Nevada state courts, the Supreme Court of Nevada is the final, and
5    only, authority. In this case, the Supreme Court of Nevada held that – in context – the State
6    did not improperly vouch for the credibility of the victim, did not refer improperly to petitioner
7    as a liar in arguing credibility, and did not improperly argue regarding the reactions of others
8    reflected by the evidence. On federal habeas review, petitioner in essence seeks to
9    challenge and reargue these holdings of the Supreme Court of Nevada on issues of Nevada
10   state law. However, the Supreme Court of Nevada has held to the contrary, and that is the
11   end of that matter.
12   Petitioner nonetheless challenges the state supreme court's holdings as findings of fact
13   and urges that the findings were "objectively unreasonable," *i.e.*, apparently, unreasonable
14   determinations of fact under 28 U.S.C. § 2254(d)(2). The Court is not persuaded under the
15   applicable deferential standard of review.
16   Petitioner contends that the state supreme court erroneously found that the prosecutor
17   made only a neutral argument that both stories could not be true such that the jury had to
18   decide which person to believe. Petitioner urges that, plainly, the prosecutor was labeling
19   Obando as a liar.[7]

20   The prosecutor argued as follows:

> . . . . So this is not a reasonable doubt case. This is who's
> telling the truth. This is who is the liar in the midst. Is it Maria

---

[6](...continued)
federal habeas relief so long as "fairminded jurists could disagree" on the
correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S.
652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has
explained, "[E]valuating whether a rule application was unreasonable
requires considering the rule's specificity. The more general the rule, the
more leeway courts have in reaching outcomes in case-by-case
determinations." *Ibid*. . . . .

[7]#30, at 13.

>       Berumen or is it someone else?  That's really what you have to work with.
>
>       . . . . .
>
>       There's no mistake.  This could not be a misinterpretation.  There is a liar in the midst.  You have to decide who. . . . .

#17, Ex. 14, at 62 & 68.

The Supreme Court of Nevada stated that "[w]hen viewed in context, the State simply argued that both the victim's and appellant's testimonies could not both be true, thus the jury had to decide which person to believe."[8]  To conclude that such a determination constituted an unreasonable determination of fact under Section 2254(d)(2), this Court must be able to conclude that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.  *Taylor, supra*.  The state supreme court's finding instead is amply supported by the state court record.

Petitioner further challenges the state supreme court's determination that "all of the reactions [by other individuals] discussed by the State were presented in testimony from witnesses."[9]

In particular, petitioner urges, first, that Isabel Campos did not testify that "she believed that Obando was lying."[10]  What the prosecutor actually argued was as follows:

>       Isabel Campos, she had to be wrong too because remember with all the denials with the cops, nothing happened, no, no, no, I didn't have sex with that woman. Remember when she had that private conversation with him what did she say, couldn't fool her. She knew the truth. She said, "How could you bring another woman into our bedroom?" There's no doubt in her mind.

#17, Ex. 14, at 100.

Isabel Campos in fact did testify – with regard to Obando's complete denials of having sex with the victim when interviewed by the police in her presence – that she said to Obando

---

[8] #18, Ex. 44, at 4.

[9] #18, Ex. 44, at 5.

[10] #30, at 13.

-11-

in the private conversation: "How could you bring another woman into our bedroom?"[11] The prosecutor's argument that "she knew the truth" and that there was "no doubt in her mind" was a fair inference as to Campos' readily apparent assessment of whether she believed Obando's complete denials – which was what the prosecutor was referring to in the challenged portion of the closing – reflected by her own testimony in court. The prosecutor argued an inference readily drawn from facts in evidence.

Petitioner urges, second, that the victim's brothers did not testify that "they 'had no doubt in their mind' that Obando was guilty."[12] What the prosecutor argued was as follows:

> He said that he met Maria's brothers. Then why are they going to go down to the Sands and pull his head off of his shoulders. They know their sister. They know this man. There was no doubt in their mind, was there?

#17, Ex. 14, at 99.

There indeed was testimony that, upon hearing of the incident, the victim's brothers immediately went down to the Sands and confronted Obando in a threatening manner, such that the police had to intervene.[13] The Court is constrained to agree with the prosecutor. The brothers' action hardly suggested equivocation rather than certainty. The prosecutor argued an inference readily drawn from facts in evidence.

Petitioner urges, third, that Maria Saldierno Garcia "never testified that 'she knew innately in her heart' Obando was a rapist, or that he committed the alleged conduct."[14] Nor did the prosecutor either then make that argument or state that she used those words:

> . . . . They drove straight there [to his home] and there was only one thing on his mind. And you know how you know that for sure, you know that for sure from Maria Saldierno [Garcia]. Because unlike this man who testified that oh, she counseled me

---

[11] See #17, Ex. 12, at 128-32.

[12] #30, at 13.

[13] See #16, Vol. 11, at 41-42 & 46-47; #17, Ex. 12 at 55-60, 137 & 140.

[14] #30, at 13.

-12-

> after the fact about this girl. Maria Saldierno said no, this is beforehand. This is not some girl you can just go take to bed. It was ahead of time.
>
> What would provoke her to say such a thing? Why? What was it about this man that she knew innately in her heart that that's what his idea was? She knew. She didn't articulate it like that. And if she did, frankly that would suggest to you that she was coached. So by her own words all of these elements [including the asportation element for kidnapping] have been satisfied, one through five.

#17, Ex. 14, p. 66.[15]

The prosecutor did not argue, as petitioner suggests, that Garcia testified that "she knew innately in her heart" that Obando was guilty. The prosecutor argued to the jury that Garcia's testimony supported the inference – in what he expressly couched as his own terminology – that she knew innately in her heart that Obando had "only one thing on his mind" with regard to the victim. Garcia's testimony did indeed support such an inference as to her view of Obando.[16] Again, the prosecutor argued an inference readily drawn from testimony in evidence.

This Court, frankly, is not sanguine that it would have sustained an objection, on these grounds, in regard to these remarks, even under the non-constitutional standards applicable to prosecutorial argument in a federal criminal trial. In all events, the state supreme court's findings characterizing the content of the State's closing argument clearly did not constitute unreasonable determinations of fact on AEDPA review. Quibbles such as these are not the stuff of which reversals of convictions are made on deferential review under AEDPA.

Petitioner otherwise does not present cogent, nonconclusory argument establishing that any implicit rejection by the Supreme Court of Nevada of a claim that the prosecutor's argument violated due process was an objectively unreasonable application of clearly established federal law as determined by the United States Supreme Court. Petitioner has

---

[15] Petitioner's counsel cites to the wrong portion of the trial transcript in the reply, with respect to the "innately in her heart" reference in the argument.

[16] See #16, Ex. 11, at 36-37 & 41.

1  the burden of persuasion on federal habeas review in this regard, and he clearly has not
2  effectively shouldered, much less carried, that burden here.[17]

3  Ground 1 accordingly does not present a basis for federal habeas relief, under the
4  "doubly deferential" standard of review applicable to claims of ineffective assistance of
5  counsel.

6  ***Ground 2***

7  In Ground 2, petitioner alleges that he was denied effective assistance of counsel when
8  appellate counsel (who was not the same attorney as trial counsel) did not raise issues
9  regarding the prosecutor's allegedly improper closing argument on direct appeal, relying on
10 the same allegedly improper closing arguments that form the underlying factual basis for
11 Ground 1.

12 The Supreme Court of Nevada rejected the claims presented to that court on the
13 following grounds:

15 > First, appellant claims that his appellate counsel was ineffective for failing to argue on direct appeal that the State, during closing argument, vouched for the credibility of the victim. Appellant failed to demonstrate that this claim had a reasonable probability of success on appeal. As discussed above, appellant failed to demonstrate that the State improperly vouched for the credibility of the victim. Therefore, we conclude that the district court did not err in denying this claim.

19 > Second, appellant claims that his appellate counsel was

---

[17] See also note 6, *supra*. This Court accordingly has no occasion to tarry over the pros and cons of trial counsel's tactical decisions with regard to the prosecutor's closing argument. The state supreme court held that the prosecutor's comments were not improper under state law, which is the end of that issue. And petitioner has not demonstrated that an implicit rejection of any underlying due process argument was an objectively unreasonable application of clearly established federal law as determined by the United States Supreme Court *on an issue of constitutional law binding on the States*. No further analysis is necessary once petitioner has failed to carry his burden of establishing that the comments were improper in the first instance. Whatever trial counsel believed or did not believe regarding the propriety of specific comments during the closing argument is irrelevant, as counsel's alleged subjective beliefs do not carry plaintiff's burden of proof. *See Harrington*, 131 S.Ct. at 790 ("*Strickland*, however, calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind."). Bare speculation that the trial would have ended differently if defense counsel had objected to the remarks similarly fails to carry petitioner's burden of proof as to prejudice under the applicable "doubly deferential" standard of review. The fact that the jury deliberated from 4:15 p.m. to 10:40 p.m. (#16, Ex. 1, at electronic docketing page 15) also does not in and of itself establish prejudice from the failure to object and carry the day for petitioner on federal habeas review.

-14-

> ineffective for failing to argue on direct appeal that the State labeled appellant a liar. Appellant failed to demonstrate that this claim had a reasonable probability of success on appeal. As discussed above, appellant failed to demonstrate that the State labeled appellant a liar. Therefore, we conclude that the district court did not err in denying this claim.
>
> Third, appellant claims that his appellate counsel was ineffective for failing to argue on direct appeal that the State argued facts not in evidence. Appellant failed to demonstrate that his appellate attorney was deficient or that he was prejudiced. As discussed above, appellant failed to demonstrate that he suffered prejudice when the State referred to the reactions of people who knew the victim. Thus, appellant fails to demonstrate that this issue had a reasonable probability of success on appeal. Further, at the evidentiary hearing, appellant's appellate attorney stated that he did not raise this claim because he believed that these comments did not warrant individual appellate attention. Therefore, . . . the district court did not err in denying this claim.

#18, Ex. 44, at 7-8.

The state supreme court's rejection of these claims was neither contrary to nor an unreasonable application of *Strickland*.

When evaluating claims of ineffective assistance of appellate counsel, the performance and prejudice prongs of the *Strickland* standard partially overlap. *E.g., Bailey v. Newland*, 263 F.3d 1022, 1028-29 (9th Cir. 2001); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Effective appellate advocacy requires weeding out weaker issues with less likelihood of success. The failure to present a weak issue on appeal neither falls below an objective standard of competence nor causes prejudice to the client for the same reason – because the omitted issue has little or no likelihood of success on appeal. *Id.*

As discussed above as to Ground 1, the Supreme Court of Nevada held that – in context – the State did not improperly vouch for the credibility of the victim, did not refer improperly to petitioner as a liar in arguing credibility, and did not improperly argue regarding the reactions of others reflected by the evidence. The Supreme Court of Nevada is the final arbiter of Nevada state law, and its determination that the claims did not have a reasonable probability of success on direct appeal under Nevada law is the end of that matter. Petitioner otherwise has not presented cogent, nonconclusory argument establishing that any implicit rejection by the Supreme Court of Nevada of a claim that the prosecutor's argument violated

due process was an objectively unreasonable application of clearly established federal law as determined by the United States Supreme Court. Petitioner thus has failed to carry his burden under AEDPA.

Petitioner urges, however, that appellate counsel's testimony at the state evidentiary hearing establishes that he rendered deficient performance under the *Strickland* standard:

> . . . . [A]ppellate counsel testified that improper vouching for witnesses by the prosecutor was "troubling." Ex. 34, p. 36. Furthermore, appellate counsel acknowledged that the Nevada Supreme Court has in other instances reviewed claims of prosecutorial misconduct even if they weren't preserved at trial. Ex. 34, p. 37. Under these circumstances, Obando submits that counsel's failure to raise this issue was objectively unreasonable, even if they had not been properly preserved.

#30, at 14.

This argument also strays wide of the mark, for two reasons.

First, appellate counsel did *not* testify either that he found the prosecutor's specific arguments *in this case* – which he no longer had an exact independent recollection of by the time of the evidentiary hearing – "troubling" or that he believed that the prosecutor's arguments *in this case* presented plain error that provided a basis for reversal even absent contemporaneous objection. In context, counsel instead acknowledged that, *as a general matter*, improper vouching by a prosecutor was "troubling." And counsel acknowledged that the state supreme court, *as a general matter*, potentially could review claims of prosecutorial misconduct for plain error even if not preserved at trial. When asked about *the present case*, however, counsel testified: (a) with regard to the prosecutor's comments allegedly vouching for witness' credibility and about other persons' reactions, that he "did not think that the comments . . . were so egregious as to warrant individual appellate attention;" and (b) further that he did not believe that *any* of the comments made by the prosecutor affected petitioner's substantial rights and thus rose to the level of plain error that could be reviewed without objection. See #18, Ex. 34, at 35-37 & 45-47. Petitioner's effort to "spin" appellate counsel's testimony into saying something that he in truth did not say is, at best, not persuasive, particularly on deferential AEDPA review.

Second, as noted previously herein, "*Strickland* . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *See Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 790, 178 L.Ed.2d 624 (2011). Even if appellate counsel had testified as petitioner suggests, which counsel did not, such testimony would not establish ineffective assistance of counsel in the face of: (a) the state supreme court's controlling holding that no improper argument had been shown under state law in this case, and (b) petitioner's failure to establish by cogent, nonconclusory argument that the state supreme court's implicit rejection of any underlying federal due process claim was an objectively unreasonable application of clearly established federal law.

Ground 2 therefore fails to provide a basis for federal habeas relief.

IT THEREFORE IS ORDERED that the petition for a writ of habeas corpus shall be DENIED and that this action shall be DISMISSED with prejudice on the merits.

IT FURTHER IS ORDERED that a certificate of appealability is DENIED. Reasonable jurists would not find debatable or wrong this Court's conclusion that the state supreme court's rejection of petitioner's claims was neither contrary to nor an unreasonable application of clearly established federal law. In the two grounds presented, petitioner maintains that trial and appellate counsel were ineffective for failing to challenge allegedly improper closing argument by the State. The Supreme Court of Nevada held that the arguments were not improper under Nevada state law, which is the end of that matter; and petitioner has not persuasively established that the state supreme court's decision was based upon an unreasonable determination of fact. See text, *supra*, at 6-8, 10-13 & 14-16. Petitioner otherwise has not shown by cogent, nonconclusory argument that the state supreme court's implicit rejection of any underlying federal due process argument was contrary to or an objectively unreasonable application of clearly established federal law as determined by the United States Supreme Court. Petitioner's extensive reliance upon federal criminal decisions in which federal courts exercise supervisory authority over federal prosecutors simply is misplaced, because, *inter alia*, the decisions relied upon, in the main, are not applying constitutional doctrine applicable to the States. See text, *supra*, at 8-10.

1    The Clerk of Court shall enter final judgment accordingly, in favor of respondents and
2    against petitioner, dismissing this action with prejudice.
3    DATED:    February 22, 2012.

_____
EDWARD C. REED
United States District Judge